Welch, C. <1.
One objection taken to the indictment is, that it does not sufficiently charge what is called in legal parlance the scienter; in other words, it does not in so many wrords, or in direct language, charge that Stewart, at the time he suborned Saxton to take the false oath, knew and intended that Saxton would, or should, do so corruptly and knowing it to be false. It is undoubtedly law, that this *483 guilty knowledge on the part of the suborner is a necessary element in the crime of subornation of perjury, and must therefore be averred in the indictment, and proved upon the trial. It is not enough to aver and prove that he had knowledge of the falsity of the testimony which the suborned witness was to give; he must also know or intend that the witness is to give the testimony corruptly, or with a knowledge or belief of its falsity. But this indictment does, as we think, sufficiently charge this guilty knowledge of the defendant. It first charges, in due form of law, the crime of willful and corrupt perjury by Saxton, including the averment that Saxton knew his testimony to be false and fictitious, and concluding with the averment that Sax-ton had “in manner aforesaid” committed willful and corrupt perjury; and it then charges that Stewart “ procured, persuaded, and suborned the witness to commit said willful and corrupt perjury in manner and form aforesaid.” The natural and primary import of this language is, to charge upon Stewart a knowledge of the guilt and corruption of the witness. The essence of perjury is the knowledge of the witness that what he states is false. To persuade him to commit perjury is to persuade him to stifle his conscience, and to state under oath what he knows not to be true. To persuade him to do less, that is, to make the false statement without the guilty knowledge, is not to persuade him to commit the crime. If I ask a man to lie, I necessarily ask him to deceive, and to deceive intentionally, because without the intention to deceive there is no lie, but a mere mistake. I know that before the statute of 14 and 15 Victoria, chap. 100, sec. 21, the English forms of indictment for subornation of perjury contained an averment, which is not found in this indictment, namely, that the defendant, at the time he suborned the witness, “knew that he would” testify falsely. But I can not see how this averment strengthens or renders any more certain the charge of the scienter; nor can I conceive of any evidence by which the averment can be proved, as the defendant could never know beforehand what the witness would testify. The effect of the English statute was, *484 substantially, to dispense with this ambiguous and. apparently useless averment, and to sanction a form of indictment like that in the present ease, which we think is in this respect sufficient.
But it is said that the indictment is also insufficient, because it shows upon its face that the court of Indiana had no jurisdiction of the cause in which Saxton testified, and that his oath was therefore extrajudicial and unauthorized by law. The same objection is made upon the testimony, which shows, as the indictment avers, that neither Stewart nor his wife ever resided in Indiana, and which shows further, that by the laws of Indiana the court has no jurisdiction to grant divorces, except in eases where at least one of the parties resides in the state. And the same question is again raised by wTay of exception to the charge of the court.
We fail to see any force in this objection, in either of the forms in which it is raised. The question argued at length by counsel, namely, whether a decree of divorce rendered-in one state is binding upon parties who both reside in another state, need not now be considered. It is enough for the present case to say that the decree affects the rights of the parties in Indiana. That it has such effect in Indiana is not denied, and is abundantly shown by the statutes and judicial decisions in that state. By the laws of Indiana, the fact of residence is made part of the case, and is required to be proven by the petitioner, and the court is expressly authorized to hear the evidence by which it is to be established. While the petition is pending, and the question of residence is undetermined, or the fact of residence has been found by the court, surely there is a case or matter pending in which the-court is authorized by law to hear testimony and to administer oaths to witnesses. Whether the decree of the court, based upon an erroneous finding of the fact of residence, will be binding upon the parties, and estop them from denying the fact of residence, is entirely another question; it is enough here to know that the laws of Indiana authorize the institution of the proceed *485 ing before tbe fact of residence is established, and give the court power to hear testimony in the case.
It seems to us, therefore, that the indictment is sufficient; that the oath so taken by Saxton was not extrajudicial, and that the court did not err in its charge in that respect.
But it is also claimed that the court erred in its instructions touching the evidence of Stewart’s good character. The form of stating the law as to evidence of good character adopted by the court in this case is not without the sanction of authority. But it is condemned by what we deem the better authorities, and, as we think, by reason, as unsound, and calculated to mislead the-jury. It is liable, to say the least, to an interpretation by which the accused is virtually deprived of all benefit from evidence of bis good character; because, if such evidence can only be used in a “doubtful case,” it can avail the defendant nothing, for he is entitled to an acquittal without- it; and in a case not doubtful, where alone he needs the evidence, for the very purpose of making the case doubtful, or it may'be, of turning the scale in his favor, he is denied its benefit. We think the true and safe rule in such cases is that embodied in the charge asked by Stewart’s counsel in the present case, and substantially laid down by this court in Harrington v. The State, 19 Ohio St. 268. In other words, the jury should be instructed to consider evidence of defendant’s good character as they consider other evidence in the case, and its weight and bearing should be left entirely to them.
For the error in the charge of the court, in relation to the evidence of good character, the judgment must be reversed, and the' cause remanded for a new trial and further proceedings.
Other errors are assigned upon the record, but we deem it unnecessary to notice them, further than to say that, in our judgment, neither of them is well taken.

Judgment reversed and cause remanded.